IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KIMBERLY BENTON, *et al.*, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>STATE FARM FIRE & CAS. CO., *et al.*, )<br>)<br>    Defendants. ) | CIVIL ACT. NO. 2:14cv77-CSC<br>       (WO) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Plaintiff's motion to remand (Doc. 5). Having considered the motion, the court concludes that the motion is due to be granted.

**I.   Standard of Review**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Therefore, a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* "at the earliest possible stage in the proceedings." *Id*. at 410. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at

377. Thus, when a case is removed to federal court, the "heavy" burden of establishing the existence of subject matter jurisdiction rests on the removing party. *Burns*, 31 F.3d at 1095.

"[R]emoval is only permissible when plaintiff's claim could have been filed in federal court originally." *Burns*, 31 F.3d at 1095. Thus, an action filed in state court may be removed to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1441(a). When a case is removed on the basis of diversity jurisdiction, the case must be remanded to state court if complete diversity is lacking, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806). Further, a case removed on the basis of diversity jurisdiction must be remanded if one of the parties "properly joined and served as [a d]efendant" is a citizen of the state in which the suit is filed, 28 U.S.C.§ 1441(b), or if the amount in controversy does not meet the $75,000 jurisdictional minimum specified in 28 U.S.C. § 1332 (a). "[W]here damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007). All questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court. *Burns*, 31 F.3d at 1095.

## II. Discussion

On March 19, 2013, Kimberly and John Benton and their daughter, Faith Benton, filed a complaint in the Circuit Court of Montgomery County, Alabama, asserting state law claims against State Farm Fire and Casualty Company and Alex Bowden, who is a State Farm insurance agent. (Doc. 1-10 ¶ 5). The Bentons and Defendant Bowden are Alabama

citizens.  (Doc. 1-10 ¶¶ 1-3, 5).  State Farm is a foreign corporation doing business in Alabama.  (Doc. 1-10 ¶ 4).

The Bentons assert state law claims alleging that, after their home was damaged on August 4, 2011, by a sudden and accidental water leak, State Farm, in bad faith, did not pay the claim despite being obligated to do so by the terms of the Benton's homeowners' insurance policy.  (Doc. 1-10 ¶¶ 7, 16-24).  The Bentons also assert state law claims alleging that State Farm and Bowden fraudulently misrepresented or suppressed the terms of the insurance policy and that State Farm negligently or wantonly hired, trained, or supervised its agents, adjusters, and claims representatives.  (Doc. 1-10 ¶¶ 25-45).

On February 6, 2014, the Defendants filed a notice of removal.  The Defendants contend that the Bentons' January 21, 2014, deposition testimony revealed that they cannot arguably prove certain facts necessary to their claims against Bowden.  (Doc. 1). Accordingly, the Defendants argue that Bowden was fraudulently joined and that diversity of citizenship exists in this case for purposes of establishing subject matter jurisdiction.  *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("'When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.'" (quoting *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)).

However, to establish diversity jurisdiction, the removing party must not only

demonstrate that the properly-joined parties are completely diverse,[1] but, where the amount in controversy is not evident from the face of the complaint, the removing party must also demonstrate "by a preponderance of the evidence" that the amount in controversy exceeds the $75,000 jurisdictional minimum.  *Lowery*, 483 F.3d at 1208.  The Bentons argue that, even if Bowden must be ignored for purposes of determining the existence of diversity of citizenship, the case must be remanded because the evidence does not demonstrate that the amount of damages sought in this case exceeds the jurisdictional threshold of $75,000.  28 U.S.C. § 1332 (a).

In their complaint, the Bentons seek unspecified compensatory damages for repairs for water and mold damage to their home.  The Defendants have submitted two contractors' estimates for repairs to the Benton's home: one estimate in the amount of $47,300, and one in the amount of $19,169.02.  (Doc. 1-7; Doc. 1-8).  However, the lower estimate contains caveats such as "estimate is based on visual scope of repair," "there are a lot of things hidden at this time that will need to be addressed once walls are opened up," "price may vary depending on actual damages that may be unknown or not visible at the time inspection was made," and "not sure where water is coming from in several locations price may vary." (Doc. 1-8 pp. 1, 8).  The court finds that, particularly given the numerous caveats in the lower estimate, the higher estimate is a more credible assessment of the cost of home repairs for water and mold damage.  Therefore, the Defendants have shown by a preponderance of the

---

[1] Because the Defendants have not met their burden to establish that the amount in controversy exceeds $75,000, the court pretermits consideration of whether Bowden was fraudulently joined.

evidence that, with respect to repairs to the Bentons' home, the amount in controversy is at least $47,300.

The Defendants have presented no evidence as to the probable value of the remaining claims for damages. Instead, relying on *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010)[2], the Defendants argue that this court can simply apply "judicial experience and common sense" to determine that, more likely than not, the remaining damages exceed $27,700, *i.e.*, the amount necessary to meet the jurisdictional minimum when combined with the Bentons' $47,300 claim for the cost of home repairs. As the Defendants point out, evidence establishing the jurisdictional amount is not necessary where it is "'facially

---

[2]The court notes that, in *Roe*, the Eleventh Circuit addressed a case that was removed within thirty days of service of the initial complaint, prior to discovery, and no evidence was submitted in support of the notice of removal. 613 F.3d at 1060. In *Roe*, the court expressly noted that its "opinion considers only removal" under the provisions of 28 U.S.C. 1446(b) that allow for removal on the basis of the initial complaint alone, where it is "facially apparent" from the allegations in the initial complaint that the jurisdictional minimum is met, even though the plaintiff did not state specifically the amount of damages sought. *Roe*, 613 F.3d at 1061 n.3. The court expressly stated that its opinion was not directed at, and "specifically" did not decide "whether or under what circumstances" a defendant could present evidence to establish removability in circumstances such as those at issue in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), where, as here, the notice of removal was filed within thirty days of receipt from the plaintiff of some pleading or paper (other than the initial complaint) from which it could first be ascertained that the action was or had become removable. *Roe*, 613 F.3d at 1061 n.4. This case is somewhat unusual in that the Defendants argue that removability first became unequivocally apparent upon receipt of the Bentons' deposition testimony, which allegedly establishes diversity of citizenship, but that a "common sense" review of the facial allegations of the complaint, combined with evidentiary submissions, establishes that the amount in controversy has been met. To the extent that *Roe* considered a court's ability to draw reasonable inferences from the specific allegations of the complaint to determine whether the jurisdictional amount has been met, the court finds that, under the circumstances of this case, *Roe* does not require a different result than *Lowery* and is informative, if not binding precedent. *But see Pretka*, 608 F.3d at 760 (indicating that, in cases removed on the basis of pleadings or papers other than the initial complaint, § 1446 "seems to require a greater level of certainty or that the facts supporting removal be stated unequivocally" (quoting *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)). Specifically, neither *Roe* nor *Lowery* permit a court to use "judicial experience and common sense" to draw inferences from the complaint about the amount in controversy in the absence of specific factual allegations to support those inferences, and, where competing factual inferences may be fairly drawn from the allegations of the complaint, neither case requires a court to indulge those inferences least favorable to remand.

apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional requirement, even when 'the complaint does not claim a specific amount of damages." *Roe*, 613 F.3d at 1061 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

However, although *Roe* recognizes that "judicial experience and common sense" may support "reasonable inferences" drawn "*from the pleadings*" to determine whether "*the case stated in [the] complaint* meets federal jurisdictional requirements," nothing in *Roe* permits the court to indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show. 613 F.3d at 1061 (emphasis added). "Judicial experience and common sense" are useless for making "*reasonable*" deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. "[W]ithout facts or specific allegations, the amount in controversy" can be determined "only through speculation—and that is impermissible." *Pretka*, 608 F.3d at 753-54 (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209, 1215 (11th Cir. 2007)). Moreover, it is axiomatic that, on a motion to remand, all questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court, *see Burns*, 31 F.3d at 1095; thus, to the extent that competing inferences may be drawn from the specific factual allegations of the complaint, the court must indulge those inferences most favorable to remand.

On the face of the complaint, in addition to the cost of home repairs, the Bentons seek

6

compensatory damages for past policy premiums paid and for unspecified past and continuing physical damage, mental anguish, and emotional distress, including Faith Benton's continuing "severe pulmonary and respiratory difficulties, seizures, breathing complications, asthma, and recurring sinus infections" that have required hospitalization and treatment by medical specialists. (Doc. 1-10 ¶¶ 14, 20). Absent from the complaint, however, are specific factual allegations from which the extent of any those damages could reasonably be inferred. For instance, it is not possible to discern from the complaint how much money the Bentons paid in policy premiums. Similarly, the extent of the Bentons' "physical and mental distress" and "emotional anguish" is left entirely to the reader's speculation; although the complaint alleges that these damages are "continuing" and have required "medical treatment," it is impossible to determine from the face of the complaint exactly what those damages encompass. In the court's "judicial experience," "physical and mental distress" and "emotional anguish" vary widely depending on the circumstances, and similar circumstances may affect different plaintiffs in different ways. Granted, Faith Benton's continuing pulmonary and respiratory damages are allegedly "severe," (Doc. 1-10 ¶ 14), but that allegation means nothing in a vacuum. There is nothing in the complaint to suggest what kind of "pulmonary and respiratory" conditions are at issue, the extent of hospitalization or medical care required, the nature and cost of Faith Benton's medical care, the nature and extent of limitations caused by these conditions, her prognosis, or anything else to indicate *how severe* those damages allegedly have been or will continue to be.

Further, although discovery has occurred in this case, the Bentons have been deposed, and their medical records have been subpoenaed, the Defendants have presented no evidence regarding the amount of policy premiums paid or the nature and extent of the Bentons' physical and mental damages.

In addition to compensatory damages, in conjunction with claims for wanton and intentional fraudulent misrepresentation and suppression, bad faith failure to pay an insurance claim, and wanton failure to hire, train, and supervise agents, adjusters, and claims representatives,[3] the Bentons seek "such . . . punitive damages as a jury deems reasonable and may award." (Doc. 1-10 ¶¶ 24, 29, 33, 36, 42). Citing *Roe* and *Blackwell v. Great American Financial Resources, Inc.*, 620 F. Supp. 2d 1289, 1291 (N.D. Ala. 2009), the Defendants argue that, using judicial experience and common sense, this court can determine, based on the facial allegations of the complaint, that a constitutionally-permissible punitive damages award would be enough, combined with the other damages at issue, to satisfy the jurisdictional minimum. Specifically, the Defendants posit that the jurisdictional amount

---

[3]The Bentons also seek punitive damages in conjunction with their breach-of-contract claim, which does not contain an independent allegation of promissory fraud. (Doc. 1-10 ¶ 20). In determining the amount in controversy, the court has not considered the request for punitive damages for breach of contract because it appears to a legal certainty that punitive damages are not available for that claim. *See* Ala. Code 1975 § 6-11-20(a) (providing that punitive damages may not be awarded except in wrongful death cases and in tort cases "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff"); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (holding that, for purposes of determining the amount in controversy, punitive damages are not to be considered when it is a "legal certainty" that such damages are unavailable); *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 925 (Ala. 2012) (holding that mere breach of a contract, without evidence of a "present intent not to perform" at the time the contract was made, does not give rise to an action for promissory fraud); *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Natural Res.*, 986 So. 2d 1093, 1117 (Ala. 2007) (noting that, in general, Alabama law prohibits "punitive damages for breach of contract, even where the breach seems particularly egregious").

may be met by a punitive damages award that bears a constitutionally-permissible ratio to the compensatory damages requested.

The likely amount of "such . . . punitive damages as a jury deems reasonable and may award" (Doc. 1-10 ¶ ¶ 24, 29, 33, 36, 42), as demanded in the complaint, cannot be determined (as the Defendants suggest) simply by considering whether the jurisdictional minimum could be met by multiplying the compensatory damages by some constitutionally-permissible ratio of punitive damages that seems reasonable based on "common sense and judicial experience." The propriety of the ratio of punitive damages to compensatory damages is only one factor in determining the reasonableness of a potential punitive-damages award and is determined in light of the facts of each individual case, not by applying a rigid mathematical formula. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *Pensacola Motor Sales, Inc. v. Daphne Automotive, LLC*, __ So.3d__, __, 2013 WL 6360967 at *14 (Ala. 2013). Further, contrary to the requirement that the court must presume that this case lies outside its limited jurisdiction, *Kokkonen*, 11 U.S. at 377, the approach suggested by the Defendants requires the court to ignore that, in light of "judicial experience and common sense," punitive damages bearing a constitutionally-permissible ratio to compensatory damages could also fall below the jurisdictional minimum. The court's task is not to merely decide whether the punitive damages at issue in this case *could* satisfy the minimum jurisdictional requirement, but whether it is *more likely than not* that they do. *See Roe*, 613 F.3d at 1061.

In *Roe*, the court noted that, in cases brought under Alabama's Wrongful Death Act, in which only punitive damages can be awarded, the "factors used to determine the value of the claims pled by" the plaintiff "can generally be evaluated using the complaint's allegations regarding the defendant's behavior." *Roe*, 613 F.3d at 1064.[4] Here, however, the complaint contains few, if any, specific factual allegations about the Defendants' behavior relevant to the various factors used for determining the value of the punitive damages claims. For example, although the Bentons allege that the Defendants' conduct was "wanton," "reckless," and fraudulent, the complaint contains no particular, non-conclusory factual allegations that shed light on exactly *how* reprehensible the Defendants' conduct allegedly was. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)) ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'"); *see also Roe*, 613 F.3d at 1065 (recognizing that, under Alabama law, "in assessing punitive damages, the worse the defendant's conduct was, the greater the damages should be"). By way of contrast, in *Roe*, the complaint included specific, non-conclusory allegations that the defendant fully knew the potential danger that its conduct posed and that the hazard was preventable with ordinary care, but "did not even attempt to

---

[4]In *Roe*, the Eleventh Circuit did not merely assume that the jurisdictional amount was met based on the mere potential for a constitutionally-permissible ratio of punitive and compensatory damages to exceed the jurisdictional minimum. Rather, the court "examine[d] the allegations in light of the particular causes of action chosen by the plaintiff" and the various factors used for calculating punitive damages in a wrongful death case. *Roe*, 613 F.3d at 1065. The court also noted that, under Alabama law, the purpose of the Wrongful Death Act was to "protect human life by making homicide expensive." *Roe*, 613 F.3d at 1065.

10

take [preventative] measures," thus causing the plaintiff's death and "endangering the lives of thousands of people." *Roe*, 613 F.3d at 1066; *see also Pensacola Motor Sales* at *16 (noting that a reasonable punitive damages award must take into consideration the degree to which the defendant was aware of the hazards his conduct posed, the degree to which the defendant recklessly or indifferently endangered others, and whether the defendant's conduct was merely an isolated incident).

Further, unlike in *Blackwell*, which is not controlling precedent, in this case there are no allegations that the Defendants were aware that the Bentons were particularly financially vulnerable or that the Defendants engaged in a long-standing pattern of misconduct. *Cf. Blackwell*, 620 F.2d at 1291 (noting that the complaint alleged a conspiracy "that continued for more than two years and, in the process, syphoned away much of an elderly man's life savings under false pretenses"); *Akins Funeral Home, Inc., v. Miller*, 878 So. 2d 267, 279 (Ala. 2003) (recognizing that economic damage inflicted on a financially-vulnerable plaintiff may support a larger punitive-damages award); *Pensacola Motor Sales* __ So.3d __, ___, 2013 WL 6360967 at *16 (Ala. 2013) (holding that a reasonable punitive damages award must take into consideration whether the defendant's conduct was an isolated incident or part of a pattern of misconduct, the duration of the conduct, and the plaintiff's financial vulnerability).

Further, despite the lack of detail in the complaint regarding the reprehensibility of the Defendants' alleged conduct, and despite the fact that the Bentons have submitted to depositions and discovery has been ongoing in the case, the Defendants have not submitted

any evidence to support their assertion that the value of the Bentons' punitive damages claims likely exceeds the jurisdictional minimum. *Pretka*, 608 F.3d at 752 ("[I]t would be 'impermissible speculation' for a court to hazard a guess on the jurisdictional amount in controversy 'without the benefit of any evidence [on] the value of individual claims.'") (quoting *Lowery*, 483 F.3d at 1220).

In the absence of evidence or specific factual allegations in the complaint upon which to establish the extent of the Bentons' compensatory and punitive damages (other than the cost of home repairs), the court cannot simply assume that the amount in controversy in this case exceeds the jurisdictional minimum. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery*, 483 F.3d at 1215.

Accordingly, this case must be remanded.

## CONCLUSION

Accordingly, it is

**ORDERED** that the motion to remand (Doc. 5) be and is hereby **GRANTED** and that this case is hereby **REMANDED** to the Circuit Court of Montgomery County, Alabama.

The Clerk of Court is **DIRECTED** to take the action necessary to accomplish the remand of this case to the Circuit Court of Montgomery County, Alabama.

Done this 15th day of May, 2014.

                                                /s/Charles S. Coody
                                               CHARLES S. COODY
                                               UNITED STATES MAGISTRATE JUDGE